IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAHABA DISASTER RECOVERY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:15-cv-02096-LSC |
| DRC EMERGENCY SERVICES, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

### Memorandum of Opinion

Plaintiff Cahaba Disaster Recovery, LLC ("Cahaba") filed this action against DRC Emergency Services, LLC ("DRC") and Alcentra Capital Corporation ("Alcentra") (collectively "Defendants"). Before the Court is Alcentra's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, (Doc. 7), and DRC's motion to transfer venue. (Doc. 4.) For the reasons stated below, Alcentra's motion to dismiss for lack of personal jurisdiction (Doc. 7) is due to be granted, and DRC's motion to transfer venue (Doc. 4) is denied.

### I. Background

In 2011, an EF5 tornado tore through Joplin, Missouri. As cleanup efforts began, DRC was awarded two subcontracts. DRC teamed with Cahaba as its

second-tier subcontractor to perform some of the work for each contract. Cahaba brought this action against Defendants in the Circuit Court of Jefferson County, Alabama, contending that DRC has failed to fully pay under the contract. Cahaba also alleged that Alcentra was liable for DRC's debts through piercing the corporate veil because Alcentra owns most of DRC's capital stock, finances DRC, and DRC's executives often take orders from Alcentra. Cahaba's complaint further alleges that "[t]his Court has personal jurisdiction over Alcentra because it is the alter ego of DRC." (Doc. 1-1 at Page 4.)

     Defendants removed this case from state court and filed the two instant motions. Alcentra coupled its motion to dismiss with supporting affidavits and papers regarding its relationship with DRC. Alcentra, a Maryland corporation with its principal place of business in New York, became a 66% indirect owner of DRC two years after the Joplin tornado. Alcentra has no offices, employees, or property of its own in Alabama. A partnership agreement between Alcentra and United Insurance Company of America ("United") shows that Alcentra cannot undertake any significant actions regarding DRC without United's consent. Further, none of DRC's officers are Alcentra employees, and DRC's management team "makes decisions about what business it wants to pursue" and "the personnel to use in the field" as well as "other routine operational issues." (Doc. 7-3 at Page 3.) DRC has

its own bank account from which it pays taxes, operating expenses, and insurance premiums.

Cahaba responded to Alcentra's motion, contending that Alcentra owns most of DRC's capital stock, Alcentra extended loans to DRC, DRC has grossly inadequate capital, and stating that Cahaba has reason to believe "that DRC often makes decisions based upon orders from Alcentra." (Doc. 17 at Page 7.) Cahaba attached to its response two documents: (1) a page from Alcentra's June 23, 2015 N-2 registration statement showing that Alcentra made loans to DRC and owned 66.7% of DRC's capital stock; and (2) a page from a deposition of Scott Gold testifying that DRC paid out approximately two million dollars in dividends in 2014. Neither the deposition nor Cahaba's brief indicate who Scott Gold is or how he is connected to DRC or Alcentra. Cahaba also included in its response a statement that it is entitled to jurisdictional discovery regarding whether Alcentra is DRC's alter ego.

The Court must address Alcentra's motion to dismiss for lack of personal jurisdiction before addressing DRC's motion to transfer, because DRC's motion to transfer relies in part on Alcentra's dismissal from this case.

## II. Personal Jurisdiction

### A. Standard of Review

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff generally "bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Court must treat facts alleged in the complaint as true if they are not controverted by affidavits submitted from the defendant. *Id.* However, if the defendant submits affidavits, the plaintiff must produce additional evidence supporting jurisdiction unless the defendant's affidavits are only conclusory. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the plaintiff's evidence conflicts with the defendant's evidence, the Court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

### B. Discussion

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels,*

*Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Personal jurisdiction is generally a two-step inquiry, as the Court must consider both whether personal jurisdiction is consistent with the forum state's long-arm statute and whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). However, for federal courts in Alabama "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)). Thus, the Court need only consider the limits of the Due Process Clause. *Mut. Serv. Ins. Co.*, 358 F.3d at 1319.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—but both are based on the defendant's contacts with the forum state.

### i. General Jurisdiction

General jurisdiction exists over defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). The general jurisdiction inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporations 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (alteration in original) (quoting *Goodyear*, 131 S. Ct. at 2851). The contacts must be sufficient that a suit in the subject state, even on unrelated dealings, is justified. *See Int'l Shoe Co.*, 326 U.S. at 318. For example, a foreign mining corporation whose mining activities ceased entirely, and whose general manager and president maintained an office in Ohio to conduct activities on behalf of the company by keeping files, holding meetings, and distributing paychecks, was subject to general personal jurisdiction in Ohio because the corporation, through its president was "carrying on in Ohio a continuous and systematic, but limited, part of its general business." *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 438 (1952). However, a defendant with no place of business, employees, bank accounts, advertisements, or manufacturing

facilities in North Carolina, but which had other companies distribute its products in North Carolina was not subject to general personal jurisdiction there. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2857 ("[The defendant's] attenuated connections to the State fall far short of the 'continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against [the defendant] on claims unrelated to anything that connects [it] to the State.").

Alcentra is not subject to general jurisdiction in Alabama. Alabama is neither Alcentra's state of incorporation nor its principal place of business. Further, Alcentra does not otherwise engage in such continuous and systematic activities that would make Alcentra essentially at home in Alabama, as the corporation does not have offices, employees, or property of its own in Alabama.

### ii.   Specific Jurisdiction

Even if Alcentra is not subject to general jurisdiction in Alabama, it might nonetheless be subject to specific jurisdiction. "Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516. Specific personal jurisdiction does not require a large volume of contacts with the forum state, as

even a single purposeful contact may give rise to personal jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) ("The Court has made clear . . . that '[s]o long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.'" (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).  Demonstrating specific personal jurisdiction requires three components. First, the contacts with the forum state must be related to the cause of action. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–774 (1984) (noting that the regular circulation of magazines in the forum state is sufficient to support personal jurisdiction in a libel action based on that magazine's contents). Second, the contacts with the forum state must be purposeful. *Burger King Corp.*, 471 U.S. at 473–474. Third, related to purposefulness, the Court must determine whether the defendant has a sufficient connection to the forum "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

If the Court finds that sufficient contacts exist to subject an out-of-state defendant to the forum state's courts, the Court must also consider whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California, Solano*

*Cty.*, 480 U.S. 102, 113 (1987). This analysis requires weighing various factors: the burden placed upon the defendant, the interests of the forum state in deciding the dispute, the plaintiff's interest in litigating in that forum, the interests of the interstate judicial system in an efficient resolution of disputes, and the interests of fundamental social policies. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292; *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000).

Here, Alabama does not have specific personal jurisdiction over Alcentra. "Where the 'subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.'" *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (quoting *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1423 (M.D. Ala. 1998)). However, "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over [a corporation] that would not ordinarily be subject to personal jurisdiction in that court when the . . . corporation is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir.

2002) (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n.17 (9th Cir. 2000); *Minnesota Mining & Mfg. Co. v. Eco Chem Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 889, 903 (2d Cir. 1981); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637–38 (8th Cir. 1975)).

The parties agree that this alter ego analysis is governed by Alabama corporate veil-piercing law, and the Court proceeds under that assumption. Under Alabama law, there are three elements a plaintiff must meet to justify piercing the corporate veil under an alter ego theory:

> "1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will or existence of its own;
>
> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
>
> 3) The misuse of this control proximately cause[d] the harm or unjust loss complained of."

*First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334–35 (Ala. 1991). Under the first element, courts look to certain factors, including whether the parent corporation owns "all or most" of the subsidiary's capital stock, whether the two entities share directors or officers, whether the parent finances the subsidiary or causes the

subsidiary's incorporation, whether the subsidiary has grossly inadequate capital, whether the parent pays the subsidiary's expenses or losses, whether the subsidiaries directors or executives take orders from the parent corporation in the parent's interests, and whether the formal legal requirements of the subsidiary are adhered to. *See Duff v. S. Railway Co.*, 496 So. 2d 760, 763 (Ala. 1986).

Although a majority owner, Alcentra own less than 70% of DRC's capital stock, and it cannot make significant decisions regarding DRC without the consent of another unrelated corporation. Alcentra has submitted affidavits and evidence showing that DRC operates independently from Alcentra, with independent officers, bank accounts, and financial statements. Further, DRC employees make business and operational decisions. Cahaba's evidence shows that Alcentra makes loans to DRC, and, assuming Scott Gold can speak knowledgeably about DRC's dividends, Cahaba's evidence shows that DRC paid around two million dollars in dividends in 2014.

Even if these payments left DRC inadequately capitalized, Cahaba fails to show or allege that Alcentra made the decision regarding dividend payments in such a manner that would indicate "complete control and domination" over DRC. On the evidence presented, Alcentra has shown that Cahaba cannot meet the first element required to pierce its corporate veil, as its affidavits show that DRC has a

separate existence of its own. Personal jurisdiction over Alcentra under an alter ego theory is thus not present in this case. *See, e.g.*, *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293–94 (11th Cir. 2000) (holding that United States personal jurisdiction over a foreign corporation was not present because its subsidiary "has its own officers and boards of directors, determines its own pricing and marketing practices, has its own bank accounts[,] offices, and employees" and thus its subsidiary's existence was not "simply a formality"); *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974)[1] (holding that personal jurisdiction over an out-of-state defendant was appropriate because he was an in-state corporation's "president, chairman of the board, and de facto sole stockholder," he was the only one authorized to sign company checks, which "were signed by him in Alabama," and he visited the corporation's Alabama real property "three or four times weekly and generally dominated its affairs").

Further, Cahaba has failed to allege that Alcentra's misuse of control proximately caused DRC's failure to pay Cahaba under the contract, as it does not contend that Alcentra's purported domination and undercapitalization of DRC extended back to the time DRC breached the contracts. Instead, Cahaba's response

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior close of business on September 30, 1981.

to Alcentra's motion clarifies its position "that Alcentra misused, or is misusing, its control over DRC to drain DRC of assets such that it can avoid paying any judgment entered against it in this action." (Doc. 17 at Page 8.) Cahaba's argument, though framed as one for piercing the corporate veil, seems instead to be one alleging fraudulent transfer. Cahaba's contention that DRC is undercapitalized speaks to DRC's current financial state, not DRC's financial position at the time it entered into or was due to execute the contracts—the time-frame to which Alabama courts look when piercing the corporate veil. *See, e.g.*, *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So. 2d 37, 39 (Ala. 1988) ("Voluntary creditors of corporations are held to a higher standard [for piercing the corporate veil] because they 'are generally able to inspect the financial structure of a corporation and discover potential risks of loss before any transaction takes place. Consequently, courts are less sympathetic with voluntary creditors who, having had the opportunity of inspection, nevertheless elected to transact with an undercapitalized corporation.'").

Considering this evidence illustrating DRC's independence, Cahaba's request for discovery on the issue of jurisdiction, averring that it believes that DRC takes orders from Alcentra, is unlikely to yield the evidence necessary to support personal jurisdiction. Also, Cahaba failed to formally move the Court for

Page **13** of **15**

jurisdictional discovery and instead included its request in its brief. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (holding that the district court did not err in allowing jurisdictional discovery when the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such request in its briefs as a proposed alternative for dismissing [the defendant]" and failed to "take[] every step possible to signal to the district court its immediate need for such discovery"). Because Cahaba has failed to formally move for jurisdictional discovery and has not shown why discovery would be fruitful in establishing jurisdiction, the Court finds that discovery is not warranted. The Court has before it sufficient facts to show that Alabama does not have personal jurisdiction over Alcentra.

## III. Venue

DRC contends that, under 28 U.S.C. § 1391, venue is improper and that this action should be transferred to the Southern District of Alabama, where venue is proper. However, 28 U.S.C. § 1441(a), not § 1391, governs venue of removed actions. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–666 (1953) ("The venue of removed actions is governed by [§ 1441(a)] . . . . Section 1391(a) limits the district in which an action may be 'brought.' . . . This action was not 'brought in the District Court, nor was Respondent 'sued' there; the action was brought in a

state court and removed to the District Court."). Section 1441(a) states that venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending" in state court. 28 U.S.C. § 1441(a). DRC acknowledges in its own notice of removal that the Northern District of Alabama is the proper district embracing the Circuit Court of Jefferson County. (Doc. 1 at Page 5.) Because venue is proper, DRC's motion to transfer is denied.

## IV. CONCLUSION

For the reasons stated above, Alcentra's motion to dismiss for lack of personal jurisdiction (Doc. 7) is due to be GRANTED, and DRC's motion to transfer venue (Doc. 4) is DENIED. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON DECEMBER 30, 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
                                                                    182184